GUSTAVE KRUGER, AS ADMINISTRATOR, ETC. v. O. N. BOSSINGHAM.[1]

May 26, 1922.

No. 22,785.

Assignments of error abandoned.
    1. Assignments of error not discussed are deemed abandoned.

Malpractice — complaint construed.
    2. In this case of alleged malpractice causing death, the complaint is construed to allege negligence in the discharge of professional duties subsequent to the day defendant came to attend plaintiff's wife after her miscarriage as well as on that day.

Failure of patient to follow directions.
    3. The claim that the patient disobeyed the directions of defendant is not sustained.

Negligence of physician proximate cause of death.
    4. There is evidence supporting the verdict finding defendant negligent, and that such negligence proximately caused the patient's death. That the negligence of other physicians may also have been a contributing cause does not absolve defendant, if his negligence was a proximate cause.

[1]Reported in 188 N. W. 324.

*Contributory negligence unproven.*

    5.  The court did not err in refusing to submit contributory negligence to the jury. There was no adequate proof of such negligence as a contributing cause of death.

Action in the district court for Lincoln county to recover $7,500 for malpractice. The case was tried before Olsen, J., who at the close of the testimony denied defendant's motion for a directed verdict on the ground that the testimony was insufficient to show that the death of Rosie Kruger was proximately caused by the alleged negligence or malpractice of the defendant, and a jury which returned a verdict for $5,000. Defendant's motion for judgment notwithstanding the verdict or for a new trial was denied. From the judgment entered pursuant to the verdict, defendant appealed. Affirmed.

*Louis P. Johnson* and *Moore, Oppenheimer & Peterson*, for appellant.

*Thor B. Ostensoe, W. R. Duxbury* and *Ole Ostensoe*, for respondent.

HOLT, J.

Action for malpractice in which plaintiff recovered a verdict. Motion in the alternative for judgment non obstante or a new trial was denied, judgment was entered, and defendant appeals.

Defendant, a physician of many years' practice, was called to attend plaintiff's wife when threatened with miscarriage as she was on a shopping trip in Lake Benton, some 7 miles from home. Defendant gave the necessary treatment and carried her back home in his automobile. Three weeks thereafter, on October 27, 1918, defendant was called to plaintiff's home to again attend Mrs. Kruger, who a few hours before had been delivered of a four months old fetus.

From this point on, the pivotal facts are in sharp dispute. Plaintiff maintains that defendant was then told that the placenta had not been expelled. The doctor claims that, when he inquired concerning the matter, he was informed that it had, and had been thrown away. Again, plaintiff testified that some days later he came to town and told the doctor that Mrs. Kruger had severe hemorrhages, chills and headaches; that he was given some pills

for her use and assured that she would be well directly; that a day or so after that he again sought the doctor and told him conditions were not improved; that he was again put off with the statement that she would be well in a few days. Defendant's testimony is that, as he casually met plaintiff on the streets of Lake Benton, he inquired concerning Mrs. Kruger, and was informed that she was doing nicely. In addition to the two times referred to, defendant saw the patient once only. Plaintiff claims this was the day after the miscarriage; defendant that it was October 6, the day after he was first called. Defendant is corroborated by his books, and we think that as to dates his testimony is the more reliable. On November 8 Mrs. Kruger's condition became alarming. Defendant was sought, but could not be found as he was away. Dr. Borsheim was then called in, and on his advice Dr. Golden also came. The two treated her. On November 14 Dr. Borsheim caused her to be taken to a hospital in Brookings, South Dakota, where decomposed parts of the placenta were removed. After the first ten days there was an improvement, but then came a turn for the worse and she died November 30. Medical experts for plaintiff attributed her death to anemia and blood poisoning caused by the presence of parts of the placenta in the uterus, while those for defendant ventured the opinion that death was not from such cause but from embolism.

There are many assignments of error not discussed in the brief, except as embraced in the general contention that there should be judgment notwithstanding the verdict. The errors assigned upon overruling defendant's objections to the reception of evidence must be deemed abandoned, since neither the oral argument nor the brief points out any reason why the rulings were incorrect.

The legal principles upon which a physician may be held for malpractice have been stated often by this court and need not be reiterated. In Clark v. George, 148 Minn. 52, 180 N. W. 1011, the cases are given. No conduct of defendant prior to October 27 enters into the cause of action. The claim is made that it must be confined to what he did or omitted to do on the day just named and not to any neglect of duty thereafter, because the complaint charges no negligence except the failure on that day to remove the placenta. This

is too narrow a construction, for it is alleged that he was in attendance upon Mrs. Kruger when she suffered the miscarriage and that he failed to use the necessary skill and care in attending upon and treating her for that ailment. This allegation would let in proof of the subsequent reports made to defendant of her condition. Defendant also understood that she did not cease to be his patient with that visit, for he testified that he told plaintiff to call him if anything was amiss with her.

It is said there should be judgment notwithstanding the verdict because the deceased did not obey the instructions of defendant. There is testimony that Mrs. Kruger was told to stay in bed when she was taken home by defendant on October 5 and that she some time thereafter attended to her household duties. There is no evidence that so doing caused miscarriage. And it is only in connection with the miscarriage that plaintiff complains of defendant's treatment. Therefore, whether Mrs. Kruger followed directions becomes important only on and after the twenty-seventh of October. There is no testimony tending to show any instructions not complied with by her except that noted hereinafter in respect to the claim of contributory negligence.

The important question in the appeal is whether the evidence supports the verdict, or, in other words, was the jury authorized to find that defendant did not exercise professional judgment in the treatment of the case, and, if he did not, was his failure so to do the proximate cause of death? The jury could find that defendant was told that the placenta had not been expelled when he was there; also that a few days thereafter he was informed on two occasions of conditions that called for treatment or action on his part. The testimony of the medical experts is that it is not good practice to remove the placenta with instruments if it can be avoided, because of the danger of infection. But one of defendant's own experts stated that, if hemorrhages persisted after the lapse of a day or so after delivery, and other means to induce nature to expel all placental parts have failed, it would be necessary to use instruments for the removal of the same. And the concensus of expert opinion seemed to be that, if defendant knew or was told that the placenta

had not been expelled, his duty towards the patient required him to keep close watch of her condition so as to be ready to give proper care if unfavorable symptoms appeared, and that hemorrhages, chills and headaches were such symptoms.

It is earnestly contended that there is no evidence to support a finding that the professional conduct of defendant was the proximate cause of Mrs. Kruger's death. The jury could well find that the part of the placenta that remained after the miscarriage caused the hemorrhages and consequent anemia which was a contributing cause of death. There is also room for a finding that infection existed in some form previous to the time Dr. Borsheim was called in; that thereafter negligent treatment, or failure of proper medical attention also may have contributed to the death of Mrs. Kruger would not absolve defendant from responsibility, if his failure to exercise the skill and care of the ordinary practitioner created a condition to which a proximate cause of death could be fairly traced by the jury. Of course, if the jury had accepted defendant's contention that he was told the placenta had been expelled and that the information he had after his visit on October 27 was that Mrs. Kruger was doing well, there could have been no basis for a verdict against him.

A defense was pleaded that Mrs. Kruger's death was caused and contributed to by her own negligence. There was no instruction requested upon contributory negligence. But immediately upon the conclusion of the charge defendant's counsel requested the submission of that issue to the jury. We have no doubt that the learned trial court would then have submitted the same if he had deemed the evidence sufficient. A sister of Mrs. Kruger, Mrs. Schultz, testified for defendant that, on the eighth of November, the day Dr. Borsheim was called in, she had a telephone communication with the deceased in which the latter said: "I feel pretty good. I was to town the other day but should have stayed home." Except for this statement there is no evidence that Mrs. Kruger was outside the house from the twenty-seventh of October until November 14, when she was taken to the hospital. In fact, all the testimony is that she was not out of the bed room. Mrs. Schultz did not know if she

had been out. In the face of this testimony and the condition she was found in by Dr. Borsheim, it is very probably that Mrs. Kruger referred to a trip to town previous to the miscarriage. But, however that may be, we think there was no evidence of any negligence on her part which would warrant the jury to find a contributing cause of death. The conceded cause of the hemorrhages persisting so long after the miscarriage was the remains of the decomposing placenta in the uterus. There was no medical testimony that a trip to town during that time would have aggravated the flowing, or that staying in bed would have rid her of the poison with which her system was already infected, or would have eliminated the cause of her trouble. In the absence of medical testimony that such a trip, had she had the ability to take it, would have been a contributory cause of death, we think the jury should not be permitted to find that it did. The burden of proving contributory negligence was defendant's. It is true, a patient should follow the directions of the physician, and defendant did testify that he told Mrs. Kruger on October 27 to be more careful than in a normal case, and stay in bed, but there was no direction how long she was to stay in bed, and no expert testimony on that subject, so that no foundation exists either for a finding that Mrs. Kruger did any negligent act or failed to follow some direction of defendant which contributed to her death.

The issues presented by the evidence were submitted to the jury in a concise and clear charge, and we are unable to find any legal ground for disturbing the verdict, approved as it is by the learned trial court.

The order is affirmed.